**WARE v. PRATT & WHITNEY AIRCRAFT CO. et al.**

**No. 6650.**

Circuit Court of Appeals, Third Circuit.
March 27, 1939.

Hoguet, Neary & Campbell, of New York City (Worthington Campbell and Mark N. Donohue, both of New York City, of counsel), for appellant.

Howard Duane, of Wilmington, Del. (Drury W. Cooper and Drury W. Cooper, Jr., both of New York City, of counsel), for appellees.

Before DAVIS, BIGGS, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below Raymond Ware, grantee of patent No. 1,864,384, issued June 21, 1932, for a piston, charged the defendants with infringement thereof. On final hearing that court held the patent invalid for lack of invention and dismissed the bill. Thereupon plaintiff took this appeal. Reference to the exhaustive opinion of the court below reported at D.C., 20 F.Supp. 168, saves needless restatement. After able briefs, able arguments, and careful consideration, we find ourselves in accord with the court's decision and as an opinion by this court would be but a duplication of what has been set forth at length by the trial court, we limit ourselves to affirming on its opinion, confining ourselves to a brief recital on our part of some of the reasons thereto moving us.

A study of the patent specifications, figures and claims shows that it concerned the broad, inclusive field of pistons and their lubrication. Thus, as stated by Judge Nields in his opinion, "In May, 1930, the Wright Company had an epidemic of scuffing or seizures of its pistons causing failures running as high as 1 in 4 engines and resulting in a shutdown. The problem was assigned to the company's engineers who tried various piston designs, clearances, materials, etc. Finally, engineers Chilton and Gagg tried out a tapered part at a very slight angle to each end of the skirt of the piston. When such tapering was adopted, 100 engines were run through without a failure and since then the scuffing and scoring of the Wright pistons and cylinders has ceased. As a result of the Chilton work, the angle of the taper adopted by the Wright Corporation at each end of the piston was 1/2 degree with relation to the piston side wall. That angularity has been retained ever since and is applied now to all Wright's pistons in current production. Chilton and Gagg filed an application for patent and were called upon to file a statement of their conception date. Since their conception date was not as early as the filing date of the Ware application, no interference was declared. The Ware patent issued in June, 1932, and the application of Chilton and Gagg was rejected and abandoned. Thereafter on December 31, 1932, the Wright Company acquired a license under the Ware patent. Prior to the adoption of the taper, the practice of the Wright Company was to form a juncture of the wall surface of the piston and the end either square or by a course chamfer or a bevel of substantial angle all of which were ineffective for entraining oil."

The specification begins: "This invention relates to pistons and more particularly to the pistons of internal combustion engines of high output, although it will be apparent that the principles involved are applicable to all other mechanisms using pistons, such as reciprocating pumps and air compressors." The patentee says: "The object of my invention is to overcome the inherent defects of the conventional piston." Each claim begins with the words "A piston", and no claim is restricted to a piston of any limited field of mechanism.

Such being the broad field of mechanism thus indicated by the patentee, we are warranted in taking the pistons found in such other fields to be analogous to the patentee's piston and the adaptation thereof to that device as an engineering, rather than an inventive, step. Bearing on that question, plaintiff's expert concedes, "The basic objective of the Ware patent is the improvement of the film conditions between the piston and cylinder." This objective the court below accurately summarized as noted above.

That the chamfer ring rounding a piston edge or tapering an advancing piston was known in the art and was shown in patents and practice, is pointed out by the court's opinion. Thus in the "Handbook for Engineers and Machine Designers" (1922), referring to the problem of piston lubrication and the principles definitely established and to be followed, one such is described, viz, "The advance edge of a bearing surface must be rounded or chamferred off in order to permit a supporting film of oil to form." The patents and uses showing in the prior

art the tapering are stated in the court's opinion and need not be repeated. They show the developments of the patent in suit were engineering, not inventive, steps. So regarding, the decree below is affirmed.